1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ANDRE JAMAL ROBINSON,<br><br>                              Petitioner,<br><br>          v.<br><br>MATTHEW CATE, Secretary,<br><br>                              Respondent. | Civil          10cv1541-LAB (CAB)<br>No.<br><br>**REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

11
12
13
14
15
16

This Report and Recommendation is submitted to United States District Judge Larry Alan Burns

17 pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the

18 Southern District of California.

19

## I.  PROCEDURAL HISTORY

20        Andre Jamal Robinson, (hereinafter "Petitioner") is a state prisoner who is proceeding *pro se* with

21 a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. [Doc. No.

22 1, hereinafter "Pet.".] Petitioner challenges his February 22, 2006 San Diego County Superior Court

23 conviction after a jury found him guilty of first degree murder and found that Petitioner personally used a

24 firearm during the commission of the offense. [*Id.* at 2.] In addition, the jury found true a special

25 circumstance that Petitioner committed murder while he was engaged in the commission of a rape. [*Id.*; *See*

26 *also* lodgment 8 at 1-2.]  Petitioner was sentenced to state prison for a term of life without the possibility

27 of parole. [Pet. at 1.]

28        Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District,

Division One. (Lodgments 4, 5, and 7.)  On March 26, 2008, that court filed an unpublished opinion unanimously affirming the judgment. (Lodgment 8.)  Petitioner's ensuing petition for review was denied by the California Supreme Court on June 11, 2008. (Lodgments 9, 10.)  Petitioner did not file a petition for certiorari in the United Sates Supreme Court. [Doc. 1 at 3.]

In addition to the direct appeal, Petitioner filed a Petition for Writ of Habeas Corpus in the San Diego County Superior Court, Case No. HS 11052, on March 16, 2009. (Lodgment 11).  It was denied on April 1, 2009. (Lodgment 12.)  On June 9, 2009, Petitioner filed a Petition for Writ of Habeas Corpus raising the same issues before the California Court of Appeal, Fourth Appellate District. (Lodgment 13).  That petition was denied in a reasoned decision on September 9, 2009. (Lodgment 14).  On November 12, 2009, Petitioner filed a Petition for Writ of Habeas Corpus before the California Supreme Court. (Lodgment 15.)  The California Supreme Court summarily denied the petition on May 12, 2010.  (Lodgment 16.)

On, July 19, 2010 Petitioner filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] On December 23, 2010 Respondent filed an answer, a Memorandum of Points and Authorities in support thereof, and lodged a portion of the state record with the Court. [Doc. No. 13.] Petitioner filed his Traverse to the petition on May 5, 2011. [Doc. No. 23.]

## II.  UNDERLYING FACTS

This Court gives deference to state court findings of fact and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1).  *See also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The relevant facts as found by the state appellate court are as follows:

A.  *The People's case*

On March 22, 1995, at approximately 2:00 a.m., the victim, Pamela Shelley, went to work as a prostitute in the area of 32nd Street and Ocean View in San Diego.  At some time before 4:00 a.m., Robinson [Petitioner] and Adrian Southerland[1] propositioned Shelley for sex.  Shelley agreed to have sex with the two men.  Southerland drove Robinson and Shelley to Lauderbach Park in Chula Vista.

After the group got out of the car, Robinson began to hit Shelley and told her to remove her clothes.  Holding a gun in his hand, Robinson told Shelley to perform oral sex on him.  Southerland had oral and vaginal sex with Shelley.  Southerland then held Shelley's feet back while Robinson had vaginal sex with her.  At some point during the sex acts, Robinson held a gun to Shelley's head.

[1]The People charged Southerland as a codefendant.  However, prior to trial, the trial court severed the cases against Robinson and Southerland.  Southerland [was] not a party to [the] appeal.

When Robinson finished, Shelley started to get up off the ground.  As she did so, Robinson shot her several times in the torso with a gun.  Shelley died from the gunshots.

DNA evidence taken from Shelley's mouth and vagina matched Robinson's DNA.  In addition, Robinson's fingerprint was on a beer bottle that police found at the scene.  The People played an audiotaped confession for the jury in which Robinson admitted to raping and shooting Shelley.

B. *The Defense*

Robinson testified at his trial.  Robinson stated that on the night in question, he had consensual sex with Shelley in the park.  After he and Shelley finished having sex, Southerland began to have sex with Shelley.  Robinson walked a short distance away.  After approximately five minutes, Robinson heard two or three gunshots.  Robinson turned and saw Shelley on the ground and Southerland running toward him.  Robinson ran to the car, and Southerland got in the car.  After reaching the car, Robinson asked Southerland something to the effect of, "Why did you shoot her?"  Southerland did not answer.  Robinson and Southerland drove to Robinson's apartment complex, and Robinson went into his apartment.  Robinson believed that after Southerland dropped off Robinson, Southerland went to a nearby apartment to pick up his children.

Robinson testified that his confession to the police was false.  He maintained that he had just "[given] in and told them what I thought they wanted to hear."

(Lodgment 8, at 2-4.)

### III.  DISCUSSION

**A.  Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (1994) (emphasis added).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996.  *Lindh v. Murphy*, 521 U.S. 320 (1997).  As amended, 28 U.S.C. § 2254(d) reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).

10cv1541

*Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  This standard is "difficult to meet," *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), and is "highly deferential," demanding that "state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal quotations and citations omitted).

The United States Supreme Court has clearly limited federal courts reviewing petitions for habeas relief to claims based upon federal questions: "it is not the province of the federal habeas court to reexamine state-court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003)); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  As long as neither the reasoning nor the result of the state court decision contradicts U.S. Supreme Court precedent, the state court decision will not be "contrary to" clearly established federal law.  *Early v. Packer*, 537 U.S. 3, 8 (2002).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citation omitted). "The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (citation omitted).

Further, "a determination of a factual issue made by a State Court shall be presumed to be correct," and Petitioner may only rebut this presumption by presenting "clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

4

## B. Analysis

Petitioner seeks habeas relief on the following grounds: 1) evidence used to convict Petitioner was obtained in violation of his *Miranda* Rights and Right to Counsel; 2) ineffective assistance of trial counsel; 3) the government failed to admit evidence that was favorable to Petitioner at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); 4) Petitioner's right to due process under the fifth and fourteenth constitutional amendments were violated when the court failed to instruct the jury on a lesser-included offense to murder; 5) ineffective assistance of appellate counsel; 6) cruel and unusual punishment in violation of the eighth constitutional amendment, due to an excessive imposition of a fine; and 7) Petitioner is actually innocent. [Pet. at 6-9, 13-24.]

Respondent contends that 1) this Court must defer to the determinations of the state court; 2) Grounds One, Three, Four, and Six are procedurally barred; 3) the state courts' determination that Petitioner's confession was properly obtained was an objectively reasonable application of controlling federal constitutional authority; 4) the state courts' determination that the ineffective assistance of counsel claim lacked merit was neither contrary to, nor an unreasonable application of, clearly established federal law; 5) Petitioner fails to establish a discovery violation under *Brady v. Maryland*; 6) Petitioner fails to show a constitution violation based on alleged instructional error; 7) the state court's determination that Petitioner's ineffective assistance of appellate counsel's claim lacked merit was neither contrary to, nor an unreasonable application of, clearly established federal law; 8) Petitioner's claim that the state court imposed an excessive restitution fine does not state a cognizable federal question; and 9) Petitioner failed to make a prima facie showing of actual innocence. [Doc. 13-1, hereinafter "Ans." at 6-21.]

Petitioner presented each of these claims to the California Supreme Court in a petition for review. [Pet. at 6-9, 19, 21, 24; Lodgments 9, 15.] The California Supreme Court summarily denied the petitions for review. (Lodgments 10, 16.) In *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision. Petitioner raised the same arguments to the Appellate Court in the same fashion in which he presented them to the California Supreme Court. [*Compare* Lodgments 4 and 5 (Appellant's Opening Brief and supplemental opening brief) *with* Lodgment 9 (Petition for Review) and *compare* Lodgment 13 (Petition for Writ of Habeas Corpus before Appellate Court) *with* Lodgment 15

10cv1541

(Petition for Writ of Habeas Corpus before the Supreme Court).] The California Court of Appeals denied the claims in two reasoned opinions. (Lodgments 8 and 14.) The Court will therefore look through the silent denials by the California Supreme Court to the appellate court opinions.

### 1. **Procedural Default as to Claims One, Three, Four, and Six**

Respondent contends that claims 1, 3, 4, and 6 are procedurally defaulted because the state court denied these claims on the grounds that Petitioner failed to state a claim for prima facie relief under *People v. Duvall*, 9 Cal. 4th 464, 474-75 (1995). [Ans. at 8; Lodgment 14.] Respondent argues that the procedural bar expressed in *Duvall* constitutes an independent and adequate state ground to bar federal review. Ans. at 8.] In a reasoned opinion, the appellate court stated in pertinent part:

> Petitioner contends that his confession was involuntary and/or taken in violation of *Miranda v. Arizona* (1966) 384 U.S. 436. [Claim 1 to the Federal Petition.] Petitioner admits, however, that he was "mirandized" upon his arrival at the police station. Petitioner does not allege that he was threatened, abused, or otherwise mistreated. Nor does petitioner allege that he requested counsel and that request was denied. Petitioner bears the burden of proving a prima facie case for habeas relief, and petitioner has not met this burden. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.) Petitioner's request for relief on this ground is denied.
>
> Petitioner next contends that, at his murder trial, the prosecution failed to disclose "favorable" evidence, including ship logs, a drawing of Lauderbach Park, and fingerprint and DNA evidence; however, petitioner does not explain how this evidence is relevant or would tend to exculpate him. Petitioner's request for relief on this ground is denied. (*People v. Duvall, supra,* 9 Cal.4th at pp. 474-475.)
>
> Petitioner contends that the trial court committed an error of law in responding negatively to the jury's question as to whether they could convict petitioner of a lesser offense.... He further contends that the restitution fines and fees assessed are excessive and constitute cruel and unusual punishment in violation of the Eighth Amendment. [Both] of these issues could have been raised on appeal. (See *In re Dixon* (1953) 41 Cal.2d 756, 759). In any event, petitioner does not state a claim for prima facie relief on [either] of these grounds and his requests for relief on these grounds are denied. (*People v. Duvall, supra,* 9 Cal.4th at pp. 474-475.)

(Lodgment 14.)

Respondent argues that the procedural bar expressed in *Duvall* constitutes an independent and adequate state ground to bar federal review. [Ans. at 8.] A state procedural default arises from the "adequate and independent state law doctrine," which provides that the United States Supreme Court lacks jurisdiction to review a judgment of a state court which "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). On direct review of a state court judgment, the resolution of a federal claim would not affect a judgment which rests on a state ground independent of the federal claim. *Id.* The Supreme Court would,

6

1  in effect, be issuing an advisory opinion on the federal claim, something the Court lacks jurisdiction to do.

2  *Id.*

3        The adequate and independent doctrine has been extended to federal habeas actions.  *Id.*  Although

4  a federal habeas court does not review a judgment of a state court, it decides whether a state prisoner is

5  in custody in violation of the Constitution or laws of the United States.  *Id.* at 729-30.  When the "adequate

6  and independent ground" for a state court's rejection of a federal claim involves a violation of state

7  procedural requirements, a habeas petitioner has procedurally defaulted his claim, and this Court cannot

8  reach the merits of the federal claim.  *Id.*  To do so would allow a habeas petitioner to avoid the limitation

9  on direct review by the Supreme Court, avoid the habeas exhaustion requirement, and undercut "the

10  States' interest in correcting their own mistakes."  *Id.* at 730-32.

11       Despite a procedural default, however, this Court may still consider the habeas claim "unless the

12  last state court rendering a judgment in the case "'clearly and expressly'" states that its judgment rests on

13  a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472

14  U.S. 320, 327 (1985), quoting *Michigan v. Long*, 463 U.S. 1032, 1041 (1983).).  Additionally, the Court

15  may reach the merits of a procedurally defaulted claim if the petitioner can demonstrate (1) cause for the

16  procedural default and actual prejudice from the claimed violation, or (2) that the failure to review the

17  claim would result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

18       Because procedural default is an affirmative defense, the state must initially plead procedural

19  default.  *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).  Once the state has asserted the existence

20  of an adequate and independent state procedural ground as an affirmative defense, the burden shifts to the

21  petitioner who must place this defense at issue by "asserting specific factual allegations that demonstrate

22  the inadequacy of the state procedure, including citation to authority demonstrating inconsistent

23  application of the rule."  *Id.* at 586.  If the Petitioner meets his burden of placing the defense at issue, the

24  ultimate burden to demonstrate the adequacy of a state procedural bar is on the State.  *Id.*

25       Here, the state appellate court denied the above-stated claims in Petitioner's state petition with a

26  citation to *Duvall*, 9 Cal. 4th at 474-75, and the California Supreme Court apparently adopted such a

27  finding in denying the petitions for review.  (Lodgment Nos. 14, 16.)  Under *Duvall*, a habeas corpus

28  petitioner must "i) state fully and with particularity the facts on which relief is sought, as well as (ii)

include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits.  Conclusory allegations made without any explanation of the basis of the allegations do not warrant relief, let alone an evidentiary hearing... [T]he burden is on the petitioner to establish grounds for his release." *Id.* at 474. (internal citations and quotations omitted).  The citation to *Duvall* makes it clear that the state court denied the state petition of the claims at issue here based on Petitioner's failure to plead a prima facie case for relief.  Further, Respondent has asserted that such a ruling constitutes an adequate and independent state bar, precluding federal habeas review. [Ans. at 8].  *See also Medley*, 506 F.3d at 869 (recognizing in the dissenting opinion that a state court's dismissal citing *Duvall* constituted a dismissal on procedural grounds for failure to meet the requirements for properly proceeding on a habeas claim in state court, and indicating that the claim would have been procedurally barred on this ground had the state raised the issue in its answer.)

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *LaCrosse v Kernan*, 244 F.3d 702, 704 (9th Cir. 2001), citing *Michigan v. Long*, 463 U.S. at 1040-41; *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996), quoting *Coleman*, 501 U.S. at 735 ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'").  "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000), quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

To be deemed adequate, the state law ground for the decision must be well-established and consistently applied. *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999), quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.").  Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits." *Morales*, 85 F.3d at 1392.

While the ultimate burden of proving adequacy rests with the Respondent, the Petitioner must place the state's affirmative defense of independent and adequate state procedural grounds at issue "by asserting

1    specific factual allegations that demonstrate the inadequacy of the state procedure." *Bennett*, 322 F.3d at

2    586.  Therefore, because Respondent has asserted the affirmative defense of procedural default, the burden

3    shifts to Petitioner to place this affirmative defense at issue.  *Id.*

4         Petitioner, however, has not argued that the state procedural bar is inadequate or that it is

5    inconsistently applied.  Petitioner cites no authority and no factual allegations to rebut Respondent's

6    procedural default defense.  Therefore, Petitioner has not met his burden under *Bennett*.  This Court thus

7    finds that the state courts dismissed Petitioner's claims on independent and adequate state procedural

8    grounds, and accordingly finds that claims 1, 3, 4, and 6 are procedurally defaulted.

9         The Court may still reach the merits of the claims, however, if Petitioner can establish cause and

10   prejudice or if a miscarriage of justice will occur by this Court's failure to reach the merits of the claim.

11   *Coleman*, 501 U.S. at 750.

12                          *a.  Cause and Prejudice*

13        To demonstrate "cause," Petitioner must show the existence of some external factor which impeded

14   his efforts to comply with the state's procedural rules.  *See Martinez-Villareal v. Lewis*, 80 F.3d 1301,

15   1305 (9th Cir. 1996).  For example, a petitioner can demonstrate cause by showing interference by state

16   officials, the unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance

17   of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner cannot demonstrate cause to

18   excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct.  *McCoy*

19   *v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992).  Nor can a petitioner show cause for a procedural

20   default where the petitioner bears "the costs associated with an ignorant or inadvertent procedural default"

21   or "where the failure to raise a claim is a deliberate strategy."  *Coleman*, 501 U.S. at 752.

22        Here, Petitioner states in a heading that "state procedural default should be excused due to

23   ineffective assistance of trial and post conviction counsel under the 'cause and prejudice' prong." [Doc.

24   23, hereinafter "Trav." at 7.] Petitioner's argument under said heading, however, provides no supporting

25   facts to substantiate this argument.  Indeed, as the relevant claims were dismissed by the appellate court

26   in response to Petitioner's habeas petitions that he prepared *pro se,* ineffective assistance of counsel cannot

27

28

serve as a cause of his failure to properly present his claims.[2]  Petitioner presents no further argument on this issue and thus has not demonstrated cause to excuse the procedural default of claims 1, 3, 4, and 6.

Even if Petitioner were able to establish cause, he fails to establish prejudice from the alleged violations of federal law.  To establish the prejudice necessary to overcome a procedural default, Petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). (emphasis in original.)  "Prejudice [to excuse claims procedurally barred in a habeas case] is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Petitioner fails to show that actual harm arose from the violations he alleges.  Furthermore, as the Court discusses below, Petitioner has failed to show that any of these procedurally-defaulted claims have merit.  Therefore, these alleged errors did not infect the trial with error of constitutional dimensions, and no actual harm resulted.  Petitioner has thus failed to carry his burden of proof regarding cause and prejudice.

### b. Fundamental Miscarriage of Justice

The Court may also reach the merits of the procedurally-defaulted claims if Petitioner can demonstrate that the failure to do so would result in a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The Supreme Court has limited the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Id.*  "Actual innocence" means factual innocence, not merely legal insufficiency; a mere showing of reasonable doubt is not enough.  *See Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997).  To show actual innocence, Petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *Id.*

Here, Petitioner has failed to carry this burden.  Petitioner has not provided a colorable showing of factual innocence in supplementary post-trial evidence.  Indeed he has presented none.  Instead, his arguments are based on facts already in the record, and, as before the state court, provides no additional

---

[2]Although, as Respondent points out, the appellate court also cited Petitioner's failure to raise Claim 6 in the direct appeal as another reason for denying that claim (Lodgment 14 *citing In re Dixon*, 41 Cal.2d 756, 759 (1953)) the Court's independent dismissal of the claim on *Duvall* grounds makes the ineffective assistance of counsel argument moot for procedural default purposes.

evidence to support his claims.  The exception simply does not apply in this case, and a miscarriage of justice would not result from upholding the procedural bar.  The Court, therefore, is precluded from considering the merits of these claims.

Even if these claims were not procedurally barred, however, they lack merit.[3]

### c.  The Merits

### i.  Claim 1 - *Miranda/ Massiah* Violation

Petitioner's first claim is that the evidence used to convict him (presumably, although not specifically stated, his confession) was obtained in violation of his *Miranda* rights and his right to counsel in violation of the Fifth and Sixth Amendments to the U.S. Constitution. [Pet. at 6.]

On May 27, 2004, San Diego District Attorney Investigator Michael Howard and Chula Vista Detective Mark Jones traveled to Norfolk, VA pursuant to a search warrant permitting them to interview the Petitioner, obtain a DNA sample, and to search his residence for a .22 caliber pistol. [Pet. at 6.] (*See also* Lodgment 1 at 247-248.)[4]  At some point following the search, Naval Criminal Investigative Service Agent Scott Campbell stated to Petitioner, "You need to talk to these guys because this Southerland fellow [], I don't know about him and if your D.N.A. matches you['re] toast."[Pet. at 6.]

On June 9, 2004, the Agent Campbell entered the USS Harry S Truman's "Brig" (jail), where Mr. Robinson was on watch as the Brig Watch Commander, and stated, "Mr. Robinson N.C.I.S. Agt. Scott Campbell, San Diego has issued a warrant for your arrest, life as you've known [it] just ended." [*Id.*]

---

[3]  The Ninth Circuit has indicated that:

> [C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 [] (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.  It is wasteful of both our resources and that of the litigants to remand to the district court a case in which that court improperly found a procedural bar, if the ultimate dismissal of the petition is a foregone conclusion.").  Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.

*Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

[4]Petitioner was interviewed for approximately an hour and a half, during which he acknowledged knowing Mr. Southerland, and denied ever having seen the victim, Ms. Shelley, when shown a photograph from her DMV records. (Lodgment 1 at 248-263).  The transcript of that interview is not part of the record before the Court, and Petitioner does not claim that evidence obtained from that interview was improperly used against him.

Petitioner claims that while he was being searched, Agt. Campbell stated, "Mr. Robinson......Mr. Robinson look at me, your going to talk to Det. Howard and Agt. Jones again, you remember them don't you?["] Petitioner claims that Agt. Campbell did not advise him of his *Miranda* Rights or his Article 31 Bravo Rights (according to Petitioner, the Military equivalent to *Miranda* Rights,) nor did he obtain a signed waiver of rights. [*Id.*] Petitioner claims that Agt. Campbell then placed him in a 4x6 disciplinary segregation cell with a sheet placed over it, preventing him from seeing out. [*Id.*]

Subsequently, Petitioner claims he asked to use the phone but was denied by order of Agt. Campbell. [*Id.*] He also claims that, although he had not been officially charged, he was required to identify himself as a prisoner, and request permission for all his actions, for example, "Prisoner Robinson request permission to exit cell, Prisoner Robinson request permission to use the head, Prisoner Robinson request permission to flush, Prisoner Robinson request permission to wash hands, Prisoner Robinson request permission to enter cell, etc." [*Id.* at 6, 13.] Petitioner claims he was then paraded through hundreds of sailors as a public spectacle escorted by a six man security detail to retrieve a change of clothes. [*Id.* at 13.]

On June 10, 2004, Petitioner claims that Lieutenant Dustin Wallace, a legal officer, presented Petitioner with discharge papers, and informed him that "due to the nature of the accusation we have to separate you from the Navy. Basically, if you do not sign these papers, the Navy will try you and when you get done doing our time San Diego comes [and] gets you and tries you." [*Id.*]

Finally, petitioner claims that, after being in custody for 24 hours, he was flown off of the ship to the Norfolk Naval Station to await the arrival of Det. Howard and Agt. Jones. While waiting, Agt. Campbell apparently stated, "You need to talk with these guys because, this Southerland fellow is not a good friend and they already know you're the shooter." Upon arrival of Det. Howard and Agt. Jones, Mr. Robinson was transported to the Virginia Beach Police Department, placed in a room for an hour or so, and then "Mirandized" by Det. Howard and interrogated by Det. Howard, Agt. Jones, and Agt. Campbell. [*Id.*]

In sum, Petitioner claims that Agt. Campbell, as a federal officer, member of Petitioner's naval chain-of-command, and one of the interrogators, did not advise Petitioner of his rights, instead keeping Petitioner in custody for 24 hours, and subjecting him to "ploys destructive to human dignity." [*Id.*]

10cv1541

Specifically, Petitioner claims that Agt. Campbell's actions placing Petitioner "in a prisoner's uniform, plac[ing] him in a disciplinary cell, denying him a phone call to seek counsel, hav[ing] him identify himself as a prisoner, [] parading him in front of hundreds of sailors with a 6 man security detail despite not having any Disciplinary Hearing, was a demoralizing ploy to overcome his will to resist talking to detectives... [and] Agt. Campbell's statement to Mr. Robinson while en route to a formal interview was a psychological ploy to enervate him and cajole him to talk to detectives thus constituting interrogation." [*Id.*]

Respondent argues that the state courts properly denied this claim on the grounds that Petitioner failed to present a prima facie showing that he was entitled to relief under the standards set forth in *Miranda*. [Ans. at 9-11.]

According to clearly established U.S. Supreme Court precedent, a suspect who is subject to custodial interrogation must be advised of his federal constitutional right to remain silent and his right to have an attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436 (1966). "Absent such interrogation, there [is] no infringement of the right . . . and there [is] no occasion to determine whether there ha[s] been a valid waiver." *Edwards v. Arizona*, 451 U.S. 477, 486 (1981). "Interrogation" includes not only direct custodial questioning by law enforcement officers, but its "functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). A functional equivalent of questioning is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

The mere failure on the part of the police to provide a suspect with full *Miranda* warnings is not, in and of itself, a violation of a suspect's constitutional rights. *U.S. v. Patane,* 542 U.S. 630, 631 (2004). "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence." *Id.*

Here, Petitioner does not dispute that he was given *Miranda* warnings prior to the interrogation that lead to his confession that was ultimately used against him at trial. [Pet. at 13.] Rather, he argues that because he was in custody for over 24 hours, and was subjected to what he describes as "ploys destructive to human dignity" while in custody without first receiving his *Miranda* warnings, that his constitutional rights were violated. [*Id.*] Petitioner also agues that police conduct prior to his *Miranda* warnings, specifically Agt. Campbell's comments en route to the formal interview that "You need to talk to these

guys because this Southerland fellow is not a good friend," and "They know you're the shooter," amounted to the "functional equivalent" of an interrogation as described by the Supreme Court in *Innis*, 466 U.S. at 301. [Trav. at 9-10.] Petitioner claims he was subject to a *"'two part investigation'* in which officers question suspects and deliberately delay *Miranda* warning in order to provoke a confession." [*Id.* at 10.]

The Court finds that Petitioner has failed to present facts to support his claim of a *Miranda* violation. Petitioner does not allege that he was subject to any questioning while in custody prior to his formal interrogation, and even if he was, Petitioner does not allege that any pre-*Miranda* statements were used against him at trial. Absent such allegations, Petitioner cannot prevail on a *Miranda* claim. *See Patane*, 542 U.S. at 631 (*Miranda* violations only occur upon the admission of unwarned statements at trial); *See also Gavin. v. Farmon*, 258 F.3d 951, 955 (9th Cir. 2001) (holding that although police violated petitioner's *Miranda* rights by continuing to question her after she requested counsel, petitioner was not entitled to habeas relief because the statement used against her at trial was elicited three days later, after proper *Miranda* warnings had been given.)[5]

Moreover, Petitioner does not allege, nor does a review of the transcript of the interrogation and the ensuing confession reveal, that the confession itself was involuntary or obtained under coercive circumstances. (*See generally* Lodgment 3.) Indeed, Investigator Howard clearly advised Petitioner of his *Miranda* rights prior to any questioning. (*Id.* at 2-4.) And, following the recitation of each right, Petitioner clearly, and without coercion, waived his rights prior to his confession. (*Id.*)

Petitioner also claims that his Sixth Amendment right to counsel, as articulated by *Massiah v. United States,* 377 U.S. 201 (1964), was violated when his request to make a phone call was denied. [Pet. at 13; Trav. at 9.] In *Massiah*, the Supreme Court held that the petitioner was denied his basic Sixth Amendment protections when his incriminating statements, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his retained counsel, were used against him at

---

[5] The Court finds the Petitioner's authority cited to be inapposite to the circumstances of the instant case since Petitioner here did not make any incriminating pre-*Miranda* statements. *See e.g.* Doc. 23 (traverse) at 10, *citing U.S. v. Rambo*, 365 F.3d 906, 909-10 (10th Cir. 2004) (finding continued questioning of defendant after he responded "no" to officer's question of whether defendant wanted to talk to officer violated defendant's right to remain silent); *U.S. v. Orso*, 266 F.3d. 1030, 1033-34 (9th Cir. 2001) (abrogated by *Missouri v. Seibert*, 542 U.S. 600 (2004), but in any event, involving pre-*Miranda* statements that were used against the defendant at trial); *United States v. Perez*, 948 F.Supp. 1191 (S.D.N.Y. 1996) (involving suppression of pre-*Miranda* statement); *Blackmon v. Johnson*, 145 F.3d 205 (5thCir. 1998) (pre-*Miranda* conversation lead to incriminating statements).

his trial. 377 U.S. at 206. Here, Petitioner never explicitly requested counsel. [Pet. at 13.] Petitioner argues that "any reasonable prudent person would conclude that an arresttee requesting use of a phone is seeking counsel." [Trav. at 9.] But even if such a request could be considered a request for counsel, as set forth above, the Court finds that the Petitioner had expressly waived his right to counsel prior to his confession, and Petitioner alleges no incriminating statements were used against him at trial that were made prior to that waiver.

In light of the foregoing, the Court finds that the state courts' rulings that the Petitioner failed to present a prima facie showing that his confession was admitted at trial in violation of his constitutional rights were objectively reasonable under controlling federal constitutional authority.  Therefore, because claim 1 is procedurally defaulted, and in any case would fail on the merits, the Court **RECOMMENDS** that the Petition be **DENIED** as to this claim.

### ii.  Claim 3 - *Brady* Violation

In his third claim, Petitioner alleges that his conviction was unconstitutionally obtained through the government's misconduct in failing to admit evidence that was favorable to the petitioner at trial. [Pet. at 8, 17.] His claim centers around three items: 1) the U.S.S. Harry S Truman's security desk journal; 2) Petitioner's own drawing of Lauderbach park depicting his location at the time of the murder; and 3) beer bottles, wrappers, and cigarette butts that were disposed of by a parks department employee, which were not collected by the state's evidence technician from the scene of the crime. [*Id.*]

The Supreme Court held in *Brady v. Maryland* that a prosecutor must disclose all material evidence, including impeachment evidence, to the defendant.  373 U.S. 83, 87 (1963);  *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985).  In order to establish a *Brady* violation, Petitioner must show (1) the evidence was suppressed by the prosecution, either willfully or inadvertently; (2) the withheld evidence was exculpatory or impeachment material; and (3) he was prejudiced by the failure to disclose.  *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Benn v. Lambert*, 283 F.3d 1040, 1052-53 (9th Cir. 2002) (citing *Bagley*, 473 U.S. at 676 and *United States v. Agurs*, 427 U.S. 97, 110 (1976).)  The Court finds that Petitioner has failed to meet this standard.

With respect to the ship logs, Petitioner claims this evidence would show, "when Mr. Robinson was taken into custody, and by whom, show a signed waiver of rights if done, show all of his movements, ie his being paraded through hundreds of his shipmates unnecessarily and against protocol." [Pet. at 8.]

But this evidence, even if Petitioner could show it had been suppressed by the government in the first instance, would not be relevant to Petitioner's guilt or innocence of the crime. Nor does it appear from the record that it would be impeaching, as Petitioner testified as to these circumstances himself (*see* lodgment 1 at 332-334,) and the prosecution presented no witness to rebut these statements. The jury was also exposed to the facts and circumstances surrounding Petitioner's arrest from the defense's closing argument. (Lodgment 1 at 338-400). Petitioner does not allege any facts to suggest that he was prejudiced by the failure of the prosecution to admit these logs into evidence.

As to the materiality of the Petitioner's drawing of Lauderbach park depicting his location on the night in question, Petitioner claims that "(1) It is the same location where state witness Hugo Martinez ... testified to picking up beer bottles and cigarette butts, (2) corroborates Mr. Robinson's testimony as to his location in the park on the night of the incident and (3) most importantly it impeaches the prosecution's version of events." [Trav. at 12.] Even if Petitioner could successfully show that the state willfully suppressed the drawing, and that it was exculpatory and/or impeaching, Petitioner fails to demonstrate that the absence of the drawing as evidence was prejudicial to his case. *See Bagely*, 473 U.S. at 678. Indeed, as Respondent points out, the jury heard the audiotape of Petitioner's interview with police during which he drew the picture of the park. (Lodgment 1 at 270-71; Lodgment 3 at 46). Moreover, Petitioner testified as to his location in the park at the time of the incident. (Lodgment 1 at 326-27.) Likewise, as Petitioner admits, the jury heard testimony from parks employee Hugo Martinez as to the location he found the wrappers and cigarette butts and that he disposed of them prior to finding the body. (Trav. at 12; lodgment 1 at 47-71.)

The Court finds that Petitioner has failed to establish a "reasonable probability" that any of the allegedly suppressed evidence would have altered the outcome of his trial. *Strickler*, 527 U.S. at 281. Accordingly, the state courts' denial of Petitioner's claim based on the determination that Petitioner failed to "explain how this evidence is relevant our would tend to exculpate him," (lodgment 14 at 1) was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Early*, 537 U.S. at 8 (stating that "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be contrary to clearly established federal law). Therefore, because claim 3 is procedurally defaulted, and in any case would fail on the merits, the Court **RECOMMENDS** that the Petition be **DENIED** as to this claim.

10cv1541

### iii.  Claim 4 - Instructional Error

In his Fourth Claim, Petitioner contends that the trial court's failure to instruct the jury on a lesser offense was a violation of his constitutional right to due process. [Pet. at 9, 18; Trav. at 13-14.] Specifically, Petitioner claims that the trial court should have given instructions on "§ 250 lesser included offenses, § 631 Acquittal First, and § 33 Partial Verdict." [Doc. 1 at 9.][6]  Petitioner also argues, without specification, that the trial court erred when it failed to instruct the jury on a lesser related (as opposed to included) offense. [Doc. 23 (traverse) at 13-14.]

In support of his claim, Petitioner cites the fact that while the jury was deliberating, the trial court received a note from the jury asking, "Can the Defendant be found guilty for any lesser crimes such as rape, fleeing a crime scene, et cetera?" [*Id.* at 9; lodgment 1 at 428: 9-11.]  In addressing the note with counsel, the trial court stated, "...we had gone over lessers and the people's theory was felony murder, which does not have any lessers.  And the people were not proceeding under aiding and abetting or conspiracy or premeditated.  So that's why there are no lessers so the answer would be no." (Lodgment 1 at 428:17-21.)[7]  After the respective counsel argued their positions to the court, the defense position being that the court should respond with an instruction on rape as a lesser-related offense (*id.* at 428-431,) the court found as follows:

> The court's position is that the people do have the charging prerogative.  They have not charged it as a rape.  They would be precluded, under the statute of limitations, from charging the rape.  They have elected to go under a felony murder rule theory, very harsh election.  It's all or nothing basically.  It's a result of the charging prerogative and the people have pursued that single theory.
>
> So I think your disagreement is with their theory, but I know of no case law that would allow, at this late date, to change to give them the option of an uncharged felony, which is past the statute of limitation, even with a waiver, to go to them when the people have not elected to charge that, even if it were possible.  Therefore, the court will answer this as follows: No.

(Lodgment 1 at 431; *See also* Pet. at 9.)

In his federal habeas petition, Petitioner does not specify any lesser offenses on which he claims the court should have instructed the jury, nor would such an instruction be consistent with the defense theory at trial – a point that defense counsel expressly recognized in the discussion with the trial court as

---

[6] It is unclear to as to which code sections the Petitioner is citing. The Court has reviewed the California Penal Code and California Criminal Jury Instructions and is unable to identify the specific jury instructions that Petitioner cites.

[7] *See* Lodgment 1 at 365-381 for argument and discussion on the record with respect to the inclusion of an instruction regarding lesser included offenses.

10cv1541

to whether or not to include jury instructions on lesser offenses:

> Mr. Bradley: I think that the state of the evidence is that [the prosecution] is arguing only the felony murder theory, only the theory that Mr. Robinson is the shooter, and I'm arguing that Mr. Robinson neither participated in a rape, nor shot anyone...I think under those circumstances, we don't need any lessers at this point...
>
> ***
>
> The Court: Okay so what you're saying is, for trial tactical purposes and under the evidence that has been educed at trial, it's all or nothing?  It's either felony murder or it's not?
>
> Mr. Bradley: ...What I'm saying at this point is, I don't think I can make an argument, based on the evidence, that's somewhere in between.
>
> The Court: And that's based on your assessment of the evidence and your assessment of all the elements for the lesser included?
>
> Mr. Bradley: Yes.

(Lodgment 1 at 375.).  Mr. Bradley's argument is consistent with the evidence and argument the defense presented at trial.  (*See* Lodgment 1 at 307:16-19 (Petitioner's testimony that he did not rape or murder the victim); 324:20-329:21 (Petitioner's testimony as to consensual sex with the victim, and fact that he did not fire the shots); 398:14-19 (defense closing argument "Mr. Robinson testified to you that he did not rape Pamela Shelley, and he testified to you that he did not kill Ms. Shelley.  If there is a reasonable possibility that what he told you in this courtroom is true, then this felony murder rule does not apply, because he told you that he did not participate in any felony.").)

In general, a state court's failure to *sua sponte* instruct the jury on lesser offenses in a non-capital case is not cognizable in a federal habeas proceeding.  *Solis v. Garcia*, 219 F.3d 922, 928-929 (9th Cir. 2000) (failure to instruct on lesser-included offenses did not present a federal question).  Indeed, as the state appellate court recognized in dismissing Petitioner's direct appeal with respect to the trial court's failure to instruct on the lesser-related offense of accessory after the fact, the U.S. Supreme Court has expressly held that a defendant has no Constitutional right to an instruction on a lesser-related offense. (Lodgment 8 at 6-7, *citing Hopkins v. Reeves*, 524 U.S. 88, 97 (1998).)  Further, there is no "clearly established law," as determined by the Supreme Court, that requires giving a lesser-included offense instruction in a non-capital case.  *See Solis*, 219 F.3d at 929; *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir.1995), overruled on other grounds by *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir.1999).  In light of the offenses charged, the evidence and arguments presented at trial, and the fact that Petitioner does not present a federal question under AEDPA because there is no "clearly established law" as determined by the Supreme Court regarding lesser included or related offenses in non-capital cases, the Court **RECOMMENDS** that Petitioner's argument as to lesser offenses should be **DENIED**.

With respect to the Petitioner's argument that the Court should have instructed the jury as to "acquittal first" and "partial verdict" (Pet. at 9,) the Court will consider whether the trial court's alleged omission of these instructions "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 *quoting Cupp v. Naughten*, 414 U.S. 141, 146 (1973) "Before a federal court may overturn a conviction resulting from a state trial in which [a challenged] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp,* 414 U.S. at 146.  A federal court examining a federal habeas petition determines whether the petitioner's Fourteenth Amendment rights were violated due to instructional error by looking at the total context of events at trial: "'not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.'" *Frady*, 456 U.S. at 169 *quoting Cupp*, 414 U.S. at 147.

While it is unclear as to the precise instructions Petitioner claims should have been given, regarding "acquittal first," the jury was specifically instructed that "[u]nless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty." (Lodgment 2 at 27.)  With respect to an instruction on "partial verdict," the jury was instructed as to all elements of felony murder (*id.* at 67,) the underlying felony of rape, (*id.* at 69,) personal use of a firearm (*id.* at 73,) and special circumstances murder in commission of a felony (*id.* at 83.)  Without deciding whether a partial verdict would have been accepted under these circumstances, there is no evidence in the record, and Petitioner alleges no facts to indicate, that had the jury been instructed as to the availability of a partial verdict, the outcome to petitioner would have been any different.  The Court therefore finds that the trial court's decision not to *sua sponte* instruct on "acquittal first" or "partial verdict" did not so infect the trial as to result in a violation of due process.

Accordingly, this Court finds that the state courts' denial of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court precedent.  Therefore, because claim 4 is procedurally defaulted, and in any case would fail on the merits, the Court **RECOMMENDS** that the Petition be **DENIED** as to this claim.

/

#### iv.  Claim 6 (Excessive Fine)

In claim 6, Petitioner argues that he suffers from cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution because the court imposed on him an excessive restitutionary fine. [Pet. at 21.]  He contends that on August 16, 2006, the trial judge imposed an "unauthorized and excessive fine of $10,000." [*Id.*] Citing California law, Petitioner argues that the trial court improperly awarded the fine by failing to consider Petitioner's inability to pay, and by failing to take into account the victim's lifestyle in determining the award. [*Id.*]

Petitioner raised the same arguments in his habeas petitions before the state courts. (Lodgment 11 at 18-19; Lodgment 13 at 30-31).  The appellate court rejected the claim based on Petitioner's failure to raise the claim on direct appeal, citing *Dixon*, and for failure to present a prima facie claim for relief, citing *Duvall*. (Lodgment 14).  In considering the merits of the claim, the Superior Court considered the state law with respect to the imposition of restitution fines, and held that "a defendant's present ability to pay is irrelevant when imposing a restitution fine, [and] absent compelling and extraordinary reasons, does not violate due process. (*People v. McGhee*, (1988) 197 Cal.App.3d 710)."  (Lodgment 12 at 9-10).  The Superior Court concluded that Petitioner failed to demonstrate that the restitution fine imposed is excessive or unconstitutional, and denied the claim. [*Id.* at 10.]

The United States Supreme Court has clearly limited federal courts reviewing petitions for habeas relief to claims based upon federal questions.  *Estelle,* 502 U.S. at 62.  The Court will only consider, therefore, Petitioner's argument that the fine is in violation of the Eighth Amendment to the U.S. Constitution.  "The Eighth Amendment provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'  U.S. CONST. amend. VIII."  *Norris v. Morgan*, 622 F.3d 1276, 1285 (9th Cir. 2010).  To establish an Eighth Amendment violation, a fine must be "'grossly disproportional to the gravity of a defendant's offense.'"  *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003) (citing *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (applying the Eighth Amendment's excessive fines clause to punitive forfeitures)).  Given that Petitioner was convicted of committing serious and violent crimes, the Court finds that the $10,000 fine imposed by the state court was not so grossly disproportionate to his offenses that it violates the Eighth Amendment.

Moreover, the U.S. Supreme Court has yet to consider whether the Eighth Amendment's prohibition of excessive fines extends to the states by virtue of the Fourteenth Amendment.  *McDonald*

1    *v. Chicago*, 130 S.Ct. 3020, 3035 n. 13 (2010).  Accordingly, the Court finds that the state courts' rulings

2    were not contrary to, nor an unreasonable application of, clearly established U.S. Supreme Court

3    precedent.  Therefore, because claim 6 is procedurally defaulted, and in any case would fail on the merits,

4    the Court **RECOMMENDS** that the Petition be **DENIED** as to this claim.

5                     **2.  Claims 2 and 5 (Ineffective Assistance of Trial and Appellate Counsel)**

6           In Claims 2 and 5, which have not been procedurally defaulted, Petitioner argues that 1) trial

7    counsel was ineffective due to his failure to conduct a reasonable pretrial investigation, to interview or call

8    character witnesses to testify, and to present certain evidence trial [Pet. at 7, 15-16 (ground 2)); and 2)

9    Petitioner was prejudiced by post-conviction counsel's failure to assert an ineffectiveness of trial counsel

10   claim, failure to raise a *Brady* violation, failure to assert Mr. Southerland had the means, motive, and

11   opportunity to commit the charged offense, and failure to raise the court's failure to instruct the jury on

12   lesser-related offenses to murder. (*Id.* at 19-20 (ground 5).)

13          A defendant is denied his Sixth Amendment right to effective assistance of counsel when a defense

14   attorney's performance falls below an objective standard of reasonableness, thereby prejudicing the

15   defense. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

16   Counsel's errors must be so serious that the result of the proceeding was fundamentally unfair or

17   unreliable.  *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).  In assessing counsel's performance, the

18   court employs a strong presumption that counsel rendered adequate assistance and exercised reasonable

19   professional judgment. *Yarborough*, 540 U.S. at 5-6; *Strickland*, 466 U.S. at 690.  The burden lies with

20   the Petitioner to rebut the presumption that his respective counsel were competent. *See U.S. v. Chronic*,

21   466 U.S. 648, 658 (1984).  The court's review of counsel's performance is "doubly deferential when it is

22   conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 6.

23          Petitioner raised both claims, with the same supporting facts, in his habeas petitions before the

24   State Courts.  (Lodgment 11 at 5-7, 16-17; Lodgment 13 at 11-16, 27-28; Lodgment 15 at 9-11, 17-18.)

25   As the California Supreme Court summarily denied the habeas petition, the Court will "look through" to

26   the Appellate Court's consideration of both issues on the merits. *Ylst*, 501 U.S. at 804.  In a reasoned

27   decision, the Appellate Court stated:

28              Petitioner also contends that he was deprived of effective assistance of counsel at trial
          because trial counsel failed to interview relevant witnesses and because trial counsel was
          "presumptively inadequate." Petitioner further contends that he was deprived of effective
          assistance of counsel on appeal because appellate counsel failed to raise various arguments, failed

to assert that Mr. Southerland had means, motive and opportunity to commit the murder, and failed to request that the "jury be instructed on lesser related offenses to murder." "[A] defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome." (*People v. Ochoa* (1998) 19 Cal.4th 353, 445; accord *Strickland v. Washington* (1984) 466 U.S. 668, 687). Petitioner has not demonstrated that his trial or his appellate counsel's performance was deficient, nor has he demonstrated that the outcome of his trial or his appeal would have been different had counsel engaged in the actions now urged by Petitioner. Petitioner's requests for relief on these grounds are denied.

(Lodgment 14 at 2). (*See also* lodgment 8 at 4, 7-11 (denying Petitioner's argument on direct appeal that trial counsel erred in failing to request an instruction on accessory after the fact).) The issue before this Court, therefore, is whether the state courts' denial of Mr. Robinson's ineffective assistance of counsel claims was contrary to, or an unreasonable application of, U.S. Supreme Court precedent. 28 U.S.C.A. § 2254(d).

With respect to Petitioner's allegation that trial counsel failed to investigate the circumstances of his confession [Pet. at 7; Trav. at 10-11,] the record indicates that trial counsel was aware of the circumstances of Petitioner's arrest and subsequent interrogation because he elicited testimony to that effect during trial. (*See e.g.* lodgment 1 at 331-338 (direct examination of Petitioner regarding circumstances of confession). Defense counsel also raised the circumstances of the confession in his closing argument, and urged the jury to consider such circumstances when deciding whether or not they should take the confession to be true. (*Id.* at 399-400.) Based on the record, this court finds that the court of appeal's analysis and conclusion that Petitioner failed to demonstrate he received ineffective assistance of counsel for failure to investigate was not unreasonable. Moreover, counsel is not required to raise a futile argument. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994). As set forth above, even assuming all the facts Petitioner raises are true, the circumstances surrounding Petitioner's confession do not rise to the level of a *Miranda* violation, and any argument to the contrary would have been unsuccessful.

With respect to the Petitioner's argument that trial counsel did not call witnesses which would have testified as to Mr. Southerland's character, and trial counsel's failure to introduce certain evidence at trial, the Court finds that the record supports the state courts' ruling. There were tactical reasons for defense counsel's actions at trial, and counsel's actions did not fall below an objective standard of reasonableness so as to prejudice the defense. *See Strickland*, 466 U.S. at 687. Accordingly, this Court finds that the court of appeals' decision is not an unreasonable determination of the facts, nor an unreasonable application of clearly established Supreme Court law. This court, therefore, **RECOMMENDS** that

10cv1541

1   Petitioner's Claim 2 for ineffective assistance of trial counsel be **DENIED**.

2          Petitioner has likewise failed to meet his burden with respect to his arguments in Claim 5 that his

3   appellate counsel was ineffective.  In order to prevail on this claim, Petitioner must show that 1) appellate

4   counsel acted unreasonably in failing to discover and brief a non-frivolous issue, and 2) it is reasonably

5   probable that, but for appellate counsel's failure to raise that issue, Petitioner would have prevailed in his

6   appeal.  *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000).

7          As set forth above, the Court finds that Petitioner's *Brady* violation, ineffective assistance of trial

8   counsel, and instructional error arguments all lack merit.  Accordingly, appellate counsel's tactical

9   decision not to raise those issues on the direct appeal was not objectively unreasonable, nor was Petitioner

10  prejudiced by such a failure.  Accordingly, the state courts' denial of Petitioner's claim on any of the

11  aforementioned bases was not contrary to, nor an unreasonable application of, established Supreme Court

12  precedent.28 U.S.C.A. § 2254(d).

13         Petitioner also argues that his appellate counsel erred in failing to argue that trial counsel was

14  ineffective due to his failure to assert that Mr. Southerland had "means, motive, and opportunity to commit

15  the charged offense." [Pet. at 19-20; Trav. at 15-16, *citing Henderson v. Sargent*, 926 F.2d 706 (8th Cir.

16  1982).] In *Henderson*, the district court granted habeas relief on an ineffective assistance of counsel claim

17  when it heard testimony, that was never presented at the petitioner's trial, indicating that another suspect

18  had the means, motive, and opportunity to commit the crime.  926 F.2d at 710-712.  The Eighth Circuit

19  upheld the district court's finding that trial counsel was ineffective for failing to pursue a viable defense

20  and for failing to investigate the plausible defense theory that another suspect committed the murder, and

21  appellate counsel was ineffective for failing to present this theory in the state post-conviction proceeding.

22  *Id.* at 712-714.  Unlike the situation in *Henderson*, Petitioner's trial counsel specifically elicited testimony

23  from Mr. Robinson at trial that he "heard a series of gunshots" while Mr. Southerland was having sex with

24  the victim, that Mr. Southerland had a .22 caliber pistol with him the night of the murder, that he saw Mr.

25  Southerland running towards him coming from the direction in which the shots were fired and where the

26  victim was lying on the ground, and that he asked Mr. Southerland why he shot the victim.  (Lodgment

27  1 at 326-328.)  As the jury was presented with this evidence, and nevertheless convicted Petitioner of the

28  crime charged, the Court finds that the evidence supports the state courts' denial of Petitioner's claim on

this basis, and accordingly **RECOMMENDS** that claim 5 be **DENIED.**

### 3.  Claim 7 (Actual Innocence)

In his final claim, Petitioner argues that he is innocent of all charges against him, is unlawfully incarcerated, and has the right to have his claims heard on the merits. [Pet. at 24-25; Trav. at 17-18.] Petitioner raised this issue in his state court habeas petitions (lodgment 11 at 20-21, lodgment 13 at 32-34, lodgment 15 at 22-24) and such petitions were denied. (Lodgments 12, 14, and 16, respectively.)

The appellate court did not address this claim in its opinion, but denied the habeas petition in its entirety, and the California Supreme Court summarily denied the petition. (Lodgments 14 and 16, respectively). Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Ylst*, 501 U.S. at 805-06. Since the dispositive state court order does not "furnish a basis for its reasoning," the Court will conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado*, 223 F.3d at 982) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early*, 537 U.S. at 8.  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. *Id.*

Actual innocence does not by itself provide a basis for habeas relief. *Schlup*, 513 U.S. at 315 (1995).  Rather, it is a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). To prevail on this claim, Petitioner must present new evidence demonstrating that it is "more likely than not" that no reasonable juror would have convicted the petitioner beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.  "The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to legal innocence as a result as a result of legal error." *Gandarela v. Johnson*, 286 F.3d 1080, 1085-86 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 321).  "'[A] colorable showing amounts to establishing that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence.'" *Gandarela*, 286 F.3d at 1085-86 (quoting *Paradis v. Arave*, 130 F.3d 385, 396 (9th Cir. 1997)).  "Actual innocence" means factual innocence, not merely legal insufficiency; a mere showing of reasonable doubt is not enough. *See*

10cv1541

*Wood*, 130 F.3d at 379.

Here Petitioner raises no "new evidence," but rather reargues the merits of other claims he has already made in this petition, which, as set forth above, have no merit. [*See* Pet. at 24-25; Trav. at 17-18 (citing *Miranda/ Massiah* violations, instructional error, *Brady* violations, ineffective assistance of counsel as the basis for this claim).]  Accordingly, he has failed to meet the *Schlup* standard here, and the Court **RECOMMENDS** that Claim 7 should be **DENIED.**

### IV.  CONCLUSION

After thorough review of the record in this matter, and based upon the above discussion, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.  This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **December 9, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than ten days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Y1st*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  November 9, 2011

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge

10cv1541