# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE JAMAL ROBINSON, <br><br> Plaintiff, <br> vs. <br><br> MATTHEW CATE, Secretary, <br><br> Defendant. | CASE NO. 10cv1541-LAB (JMA) <br><br> **ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATION; AND** <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Andre Jamal Robinson, a prisoner in state custody, filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, identifying six bases for relief. This matter was referred to Magistrate Judge Cathy Ann Bencivengo[1] for report and recommendation. Judge Bencivengo issued a lengthy and comprehensive report and recommendation (the "R&R"), to which Robinson has filed written objections.

**Legal Standards**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly

---

[1] After issuing the R&R, Judge Bencivengo was elevated to the position of district judge, and Magistrate Judge Jan Adler was assigned as magistrate judge in this case.

objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the R&R to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Id.*

**Discussion**

**Procedural History and Claims**

Robinson was convicted of first degree murder. The jury found he had used a firearm during the commission of the offense, and that he committed the murder while engaged in the commission of a rape. He was sentenced to life in prison without the possibility of parole. The details of the case against Robinson, and the procedural history of his efforts to obtain postconviction relief in state court are set forth in the R&R, and the Court **ADOPTS** this, and repeats it here only as necessary.

Robinson brings seven claims in his petition: 1) evidence used to convict him was obtained in violation of his *Miranda* rights and right to counsel; 2) ineffective assistance of trial counsel; 3) the government failed to admit evidence that was favorable to him at trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); 4) his right to due process under the fifth and fourteenth constitutional amendments were violated when the court failed to instruct the jury on a lesser-included offense; 5) ineffective assistance of appellate counsel; 6) the imposition of an excessive fine violated his Eighth Amendment rights; and 7) he is actually innocent.

**Claims 1, 3, 4, and 6**

The R&R concluded claims 1, 3, 4, and 6 are procedurally defaulted. The state courts rejected these claims, citing *People v. Duvall*, 9 Cal.4th 464, 474–75 (1995) — and, with regard to claims 1 and 6, *In re Dixon*, 41 Cal.2d 756, 759 (1953). The last reasoned decision, denying Robinson's habeas petition, explained that Robinson could have, but did not raise claims 1 and 6 on direct appeal, and cites *Dixon*. It also explains that Robinson did not state

a prima facie claim for relief, and cites *Duvall*. The R&R recommends treating failure to plead a prima facie case as an independent and adequate state-law basis for the decision.

*Dixon* sets forth a procedural bar. *See Jackson v. Roe*, 425 F.3d 654, 656 n.2 (9th Cir. 2005). Robinson objects that because he is a layman and didn't know he was supposed to raise claims 1 and 6 on direct appeal, this should not be held against him. But Robinson was represented by counsel on appeal, and parties are bound by the decisions of their lawyers about which arguments to make or which claims to raise. *See New York v. Hill*, 528 U.S. 110, 114–15 (2000). Claims 1 and 6 are therefore procedurally barred.

The two claims that were dismissed with a citation to *Duvall* only, and which are not also procedurally barred under *Dixon*, are claims 3 and 4, *i.e.*, Robinson's *Brady* claim, and his claim that the trial court erred by failing to instruct the jury on a lesser-included offense.

The law governing the proper treatment of such a denial is not particularly clear. In the post-AEDPA era, the Ninth Circuit has treated a denial under *Duvall* for failure to adequately plead a claim as pointing to a failure to exhaust. *See Sanchez v. Scribner*, 428 Fed. Appx. 742, 742–743 (9th Cir. 2011). This appears consistent with *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), which emphasizes federal courts' role in reviewing a petitioner's claims as they were presented to state courts. In other words, a state prisoner must give state courts a full and fair opportunity to review his federal claims before he presents them to a federal court, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), and a federal court should not treat a state court decision as unreasonable on the basis of allegations never pleaded or evidence it never had the chance to review. But after *Pinholster*, the Ninth Circuit has reviewed denials under *Duvall* for failure to plead a prima facie case under the reasonableness standard of § 2254(d)(1). *See Cannedy v. Adams*, 706 F.3d 1148, 1161 (9th Cir. 2013). And in any event, claims may be denied on the merits even if they are unexhausted. § 2254(b)(2).

With regard to claims 3 and 4, the Court will follow the example of the panel in *Cannedy* and consider whether the allegations supporting claims 3 and 4 do fail to state a prima facie case.

The Court has reviewed the petition as presented to the state supreme court, and there is virtually nothing about a lesser-included offense. Robinson admits his attorney didn't request an instruction on a lesser-included offense, but doesn't say what lesser-included offense he could have been convicted of. The only argument on this point is his allegation that during deliberations, the jury sent the judge a note asking whether Robinson could be convicted of a lesser-included offense, to which the judge replied simply "No." (Lodgment 15, Attachment A at 10.) There is no federal legal requirement that a judge give a new lesser-included offense instruction after deliberation has begun. And in any event, in a non-capital case, a state court's failure to instruct on lesser-included offenses presents no question of federal law. *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Robinson claims his attorney should have requested a Cautionary Instruction, but never says what instruction that was, or why it was required.

With regard to the *Brady* claim, the petition to the state supreme court concerns itself with whether certain evidence should have been offered or admitted. Refusal of a court to admit evidence, or the state to offer it, is not a *Brady* violation.

The petition also mentions in several places that particular pieces of evidence weren't turned over in discovery. The evidence the petition mentions is a drawing Robinson himself made of the park where the crime occurred, some ship's logs and record books, and some trash Robinson said he dropped near the crime scene. (Lodgment 15, Attachment A at 13.) Robinson alleged he didn't know why these items were not part of discovery, except for the trash which he said was thrown away. These vague allegations didn't give the state supreme court much to work with. How these items were favorable to him, whether they were suppressed by the state, and how they were material is never clearly alleged. *See Strickler v. Greene*, 527 U.S. 263, 280–82 (1999).

These items, as described, do not come close to meeting the *Brady* requirements. Robinson's own drawing of the crime scene was obviously known to him, and, because he himself made it, its helpfulness to him is unclear. With regard to the trash, the petition alleges that a Mr. Hidalgo, whose job or role is not alleged, picked up some beer bottles

wrappers, and cigarette butts in the park and threw them away. (Lodgment 15, Attachment A at 13.) Robinson's theory, as presented to the state supreme court, was that the trash's location was important because the location where he dropped it would have shown where he was in the park. (*Id.*) At trial, Hidalgo agreed he had picked up the trash and thrown it away; having the actual trash as an exhibit would show nothing about where it was found or where Robinson was in the park.

Robinson, who was at the time serving in the U.S. Navy, was initially taken to the USS Harry Truman, where he was detained. The ship's logs or other record books, he claims, would have shown that his confession was inadmissible under *Miranda*, because they would have shown he was in custody for 24 hours, denied a phone call, and subjected to "ploys" before being persuaded to talk. (Lodgment 15 at 4 and Attachment A at 7.) Robinson never alleged that the Navy's records were subject to the prosecution's control, and never explained why the logs would be material to any disputed fact. He did not, for example, allege anyone ever disputed the length of time he was in custody, whether he was allowed to make a phone call, or how he was treated. Nor does he allege that the logs would have included a record of the ploys he says he was subject to. And in any event, he knew about the ship's logs and never alleges any reason why his attorney could not have subpoenaed them. *See United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (where a defendant knows enough to be able to ascertain the *Brady* material on his own, there is no suppression). Furthermore, as discussed below, nothing Robinson has alleged about his interrogation shows a *Miranda* or other constitutional violation.

The Court therefore finds it reasonable that the state court of appeals and supreme court found Robinson hadn't pleaded a prima facie case, and Robinson's claims fail for that reason. Even if the Court were to reach the merits, it would reach the same conclusion as the state courts did. Robinson's petition to the state supreme court, and his petition in this Court, fall far short of showing why either claim 3 or claim 4 has any merit.

Robinson's objections as to claims 1, 3, 4, and 6 are therefore **OVERRULED**.

///

**Claim 7: Actual Innocence**

Actual innocence is offered as an argument in favor of reaching the merits of procedurally-defaulted claims, as well as a stand-alone claim. Actual innocence by itself does not provide a basis for habeas relief. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). Even if the Court were to construe this liberally as a claim that Robinson was convicted on insufficient evidence, in violation of *Jackson v. Virginia*, 443 U.S. 307 (1979), he never presented such claims to the state courts. And, in addition, the evidence was easily sufficient for reasonable jurors to convict him. The only basis for including a claim fo actual innocence here is as a gateway through which his otherwise barred constitutional claims might pass. *See Schlup*, 513 U.S. at 315.

The R&R correctly notes that actual innocence means factual innocence, not merely legal insufficiency. *See Wood v. Hall*, 130 F.3d 373, 379. To establish this, Robinson must show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*. An "actual innocence" claim must be based on reliable evidence not presented at trial. *Schlup*, 513 U.S. at 324. The R&R also correctly points out that he presented no new evidence at all, and instead made his arguments based on facts in the record. The evidence he points to includes evidence his attorney knew about and did not present, such as his being held in the brig, and the testimony of a Mr. Southerland (his co-defendant) and some unnamed witnesses.

Robinson's objections to the R&R's recommendations as to this claim are **OVERRULED**.

**Claims 2 and 5: Ineffective Assistance of Trial and Appellate Counsel**

The R&R points out that attorneys are presumed to act competently, *see Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and a petitioner must rebut this presumption. *United States v. Chronic*, 466 U.S. 648, 658 (1984). Judicial scrutiny of counsel's performance is "highly deferential," *Strickland* at 689, and requires only reasonable decisions and conduct based on what counsel knew at the time. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). There is almost never a single

correct way to defend a criminal case, and many different strategies can meet the minimal standard for competence. There is an extra layer of deference to the Court's review of counsel's performance when "conducted through the lens of federal habeas." *Yarborough* at 6; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (describing this review as "doubly deferential"). A claim of ineffective assistance of counsel requires a showing that counsel's performance fell below an objective standard, and a reasonable probability that this prejudiced the petitioner. *Strickland* at 687.

Robinson faces an uphill battle. To prevail, he must show that his trial's counsel's performance fell outside the "wide range of reasonable professional assistance," *see Strickland* at 689, and that the state courts' determination that he didn't demonstrate this was unreasonable based on the record before them. He must also show that he was prejudiced by his counsel's deficient performance, and that the state courts' determination of lack of prejudice was unreasonable, based on the record before them. *See Castaneda v. McEwan*, 2013 WL 3524068, at *7 (C.D.Cal., July 10, 2013) (discussing legal standards).

The R&R discussed both claims at length, and concluded Robinson's trial and appellate counsel acted reasonably. (R&R, 21:5–23:28.) *A fortiori*, the state courts' determination that Robinson's trial and appellate counsel acted reasonably is itself a reasonable determination.

Robinson filed specific objections. (Obj. to R&R, 11:24–14:28.) He first argues that his trial counsel, Mr. Bradley, failed to investigate the circumstances under which he confessed to the shooting. In fact, as the R&R points out, the trial record shows Robinson's trial counsel knew about the circumstances of his confession. The Court therefore construes this objection as an argument that his counsel should have obtained evidence and used it at trial, in order to get Robinson's confession suppressed.

Robinson concludes he was interrogated before being given *Miranda* warnings and denied counsel. The allegations before the state supreme court in support of these conclusions are that he was put into the ship's brig in a four foot by six foot cell with a sheet over the front so he could not see out, that he was denied permission to use the phone, that

he was forced to identify himself as a prisoner, that he was required to ask permission to do routine things like use the toilet, that he was "paraded through hundreds of sailors as a public spectacle to retr[ie]ve a change of clothes," that he was told his career in the Navy was over, and that he was told that when the police arrived, he should talk to them.[2] (Lodgment 15 at 7.) His objections to the R&R include similar allegations, although they do clarify that his request to use the phone was not coupled with a request for counsel; rather, he asked to use the phone and believes that request should have been construed as a request for counsel. (Obj. to R&R, 3:17–19.) His petition in this Court explains that he was given *Miranda* after he arrived at the police station, and before being interrogated. (Pet. at 13.)

Nowhere does Robinson allege he made any statements to authorities before being Mirandized, nor that he was abused. At most, his allegations show he was subjected to harsh confinement and urged to speak to police when the time came. Even assuming, *arguendo*, the urgings amounted to interrogation, Robinson never alleges he answered or confessed until after he was given *Miranda* warnings. *See United States v. Patane*, 542 U.S. 630, 640–41 (2004) (interrogation without giving *Miranda* warnings is not itself a violation of a suspect's constitutional rights; "[p]otential violations occur, if at all, only upon the admission of unwarned statements into evidence.") Furthermore, the conditions of confinement he describes would not render constitutionally inadmissible any statements he made later after arriving at the police station. Failing to take futile actions can never amount to ineffective assistance of counsel. *See Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir. 1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012).

Robinson also faults his trial counsel for failing to argue that his co-defendant, a Mr. Southerland, was the actual shooter. This was raised in his petition to the California supreme court (Lodgment 15 at 9, 17–18, 24), although not all details he now alludes to were presented to that court. He now argues, for example, that the number of shots a witness

---

[2] Robinson does not allege he was promised anything, or told that there was any chance he could avoid being discharged from the Navy by cooperating, or that there would be any consequences if he confessed or failed to confess. He does not allege the police who later spoke to him did anything harsh other than keeping him waiting in the police station.

heard fired would show that Southerland was the real shooter, although he doesn't explain why that would logically be so. The rest of the evidence Robinson thinks his trial counsel should have relied on pertains to whether Robinson owned a gun or a car, and Southerland's alleged propensity for violence as shown by a past violent act. Evidence of Southerland's propensity would be inadmissible under California law. *See People v. Elliott*, 53 Cal.4th 535, 580 (2012) (citing Cal. Evid. Code § 1101(a)) ("Evidence of a third party's prior crimes is inadmissible to establish the third party's criminal propensity.") As for ownership of the car and gun, Robinson doesn't explain why this would show he was not the shooter. Robinson admits he was in the park at the time of the shooting; whether he came there in his own car or some other way does not appear to be material. Likewise, Robinson did not explain to the state supreme court, nor does he explain here, how ownership of the gun is determinative.

The state court of appeals held that Robinson hadn't shown that his trial counsel's performance was deficient, nor that there is any likelihood the outcome of his trial would have been any different had his trial counsel acted as Robinson argued he should have. The Court's review of these determinations is deferential, *see Baca v. Adams*, 2013 WL 3071248 (C.D.Cal., June 18, 2013) (discussing authority). Both determinations are very reasonable and easily survive review. Either determination would be a sufficient basis for denying relief. *See Rios v. Rocha,* 299 F.3d 796, 805 (9th Cir. 2002).

Robinson claims his appellate counsel was ineffective for failing to assert ineffectiveness of trial counsel, failure to raise a *Brady* claim, failure to assert that Southerland had the means, motive, and opportunity to commit the charged offense, and failure to raise the "failure to instruct" claim. Because the ineffective assistance, *Brady*, and "failure to instruct" claim lack merit, appellate counsel was not ineffective for failing to raise them. The R&R points out that Robinson's trial counsel elicited testimony that Southerland had the means, motive, and opportunity to commit the charged crime. (R&R, 23:22–27.) Because the jury heard this evidence and convicted him anyway, it appears an appeal on the same basis would be futile. In his objections, Robinson does not point to any argument
///

his appellate counsel should have made, or evidence his appellate counsel should have relied on, other than these.

Furthermore, the only case suggesting that trial or appellate counsel is ineffective for failing to make such an argument, *Henderson v. Sargent*, 926 F.2d 706 (8th Cir. 1982), is distinguishable because trial counsel failed to investigate or pursue a viable theory that another suspect committed the charged crime. Here, Robinson's counsel did put on such a defense.

In short, Robinson's arguments amount to either complaints that his counsel didn't take futile actions, or his dissatisfaction with his counsel's trial and appellate strategy. His objections show how he would have handled his case differently, but they don't show why his counsel's strategy was unsound. Such disagreements don't support a claim of ineffective assistance of counsel. *See People v. Santos*, 741 F.2d 1167, 1169 (9th Cir.1984) (per curiam). His objections to the R&R as to these claims are **OVERRULED**.

**Cumulative Error**

Robinson also objects that he was denied his due process rights by the combined effect of individual errors. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). But because no error of constitutional error occurred at trial, cumulative prejudice is impossible. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011).

**Conclusion and Order**

For the reasons set forth above, Robinson's objections to the R&R are **OVERRULED**, and the R&R is **ADOPTED**.

The petition is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 20, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge